UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLES G. BRENDEL,

      Petitioner,

v.                           Case No.  5:15cv135/WTH/CJK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 19).  Petitioner has not replied, although invited to do so.  (*See* Doc. 20).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the

court show that petitioner is not entitled to habeas relief, and that the petition

should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On February 9, 2007, petitioner was charged in Bay County Circuit

Court Case No. 06-CF-4244, with one count of lewd and lascivious

molestation of a child under 16 years of age, in violation of Fla. Stat. §

800.04(5). (Doc. 19, Ex. B, p. 202).[1] The information alleged that petitioner

"rubbed his penis against B.P.'s vagina making union with it, or when he

touched with his hand in a lewd and lascivious manner the breast, genitals,

genital area, or buttocks of B.P., or the clothing covering them, (or) did force

or entice B.P. to so touch Charles Greg Brendel." (Ex. B, p. 202). The

complaint affidavit supporting the charge alleged:

> On November 27, 2006, the victim [B.P.] and her friend
> [C.H.] went to 5904 Sunset, located on Panama City Beach, Fl,
> and residence of the defendant. The victim along with her friend,
> and the roommate of the defendant, provided sworn statements,
> stating that the victim obtained a marijuana cigarette, commonly
> known as a blunt, from the defendant and smoked it. The
> defendant then asked the victim if she wanted a back massage.
> All four went to the defendant's bedroom, where the victim laid
> on the bed, with the defendant sitting on top of the victim. The
> defendant then had the victim take her shirt off and undid her bra.
> The defendant then began massaging the victim's back. The

---

[1]All references to exhibits are to those provided at Doc. 19.

defendant then stated "this is awkward" and requested the other two to leave the room, which they did.

> The victim states that the defendant then asked her to take her pants off, which she did. The defendant then took his pants off. The defendant then laid on his back and asked the victim to get on top of him at which point he began rubbing the victim's breasts with his hands and her genital area. The defendant also began to run the victim's genital area with his penis and asked the victim to have sex with him. The victim refused at which time the defendant became angry and told her to leave.

(Ex. B, p. 307). The charge was a second degree felony carrying a maximum possible sentence of 15 years in prison. *See* Fla. Stat. § 800.04(5)(c)2.

On January 29, 2008, petitioner, represented by Attorney Russell Ramey, negotiated a plea deal whereby he agreed to plead no contest to the charge, to be adjudicated guilty, and to be designated a sexual offender subject to sexual offender registration requirements, in exchange for the State recommending a below-guidelines sentence of 10 years on probation with early termination possible after 60 months if there were no probation violations, and to allow petitioner to serve his probation in Maryland if possible, so he could be near family. (Ex. B, pp. 206-212). The plea agreement was memorialized in a written Plea, Waiver and Consent form signed by all parties. (*Id*.). A plea hearing was held January 29, 2008. The court conducted a plea colloquy, found petitioner's plea knowingly, intelligently and

voluntarily entered, accepted petitioner's plea, and sentenced petitioner consistent with the agreement to 10 years on probation with early termination after 60 months if there was no violation. (Ex. B, pp. 289-298).

Two days later, petitioner filed a counseled motion to withdraw his plea. (Ex. B, pp. 213-214). The motion was denied after a hearing. (Ex. B, pp. 215-223). Judgment was rendered February 13, 2008. (*See* Ex. A, Docket Sheet). An order of probation was entered February 28, 2008. (*Id.*). On February 27, 2008, petitioner, through counsel, filed an amended motion to withdraw plea. (Ex. B, pp. 224-225). For reasons unknown, the amended motion remained pending without adjudication for over two years.

On July 30, 2009, an affidavit for violation of probation was filed. (Ex. A, Docket Sheet). Attorney Karl Trucks was appointed to represent petitioner. (*Id.*). Attorney Trucks discovered that the amended motion to withdraw plea was still pending and, on December 2, 2011, filed a second amended motion to withdraw plea. (Ex. B, pp. 226-231). After a hearing held January 27, 2012, (Ex. B, pp. 232-245), the state circuit denied the first amended motion to withdraw plea, and struck the second amended motion as untimely. (Ex. B, pp. 246-248). Petitioner filed a notice of appeal. The Florida First District Court of Appeal (First DCA) assigned Case No. 1D12-1293.

Petitioner was represented by Attorney Jonathan Dingus in the VOP proceeding. On April 25, 2012, petitioner admitted to violating his probation by absconding. (Ex. B, pp. 249-264). The state circuit court accepted petitioner's admission as freely and voluntarily made, and set the matter for sentencing. A sentencing hearing was held May 30, 2012. (*Id.*). The court revoked petitioner's probation and sentenced him to 5 years in prison. (*Id.*, pp. 265-288). Petitioner filed a notice of appeal from the VOP judgment and sentence. The First DCA assigned Case No. 1D12-2810, and consolidated the case with Case No. 1D12-1293 for purposes of appeal. On February 28, 2013, the First DCA summarily affirmed petitioner's original and VOP judgments and sentences. *Brendel v. State*, 108 So. 3d 1080 (Fla. 1st DCA 2013) (Table) (copy at Ex. H).

On December 16, 2013, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. A, pp. 1-59). The state circuit court denied relief without an evidentiary hearing. (Ex. B, pp. 186-312). The First DCA affirmed, per curiam and without written opinion. *Brendel v. State*, 162 So. 3d 986 (Fla. 1st DCA 2015) (Table) (copy at Ex. D). The mandate issued May 15, 2015. (Ex. E).

Petitioner filed his federal habeas petition on June 10, 2015. (Doc. 1). Petitioner was released from state custody on September 5, 2015, upon expiration of his sentence. (*See* Doc. 14; *see also* www.dc.state.fl.us/offenderSearch/). Petitioner's habeas petition raises six claims. Respondent asserts that each claim fails because it is either unexhausted and procedurally defaulted, or, if exhausted, without merit as the state court's rejection of the claim was consistent with clearly established federal law and based on a reasonable determination of the facts. (Doc. 19).

## RELEVANT LEGAL PRINCIPLES

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even

require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649,

652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this

standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review,
> federal judges are required to afford state courts due respect by
> overturning their decisions only when there could be no
> reasonable dispute that they were wrong. Federal habeas review
> thus exists as "a guard against extreme malfunctions in the state
> criminal justice systems, not a substitute for ordinary error
> correction through appeal." *Harrington, supra*, at 102-103, 131
> S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S.

Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated

on the merits in state court where that adjudication "resulted in a decision that

was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The "unreasonable determination of the facts" standard is implicated only to

the extent the validity of the state court's ultimate conclusion is premised on

unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th

Cir. 2011). As with the "unreasonable application" clause, the federal court

applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct.

1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a

factual determination "will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact

finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel in the Context of a No Contest or Guilty Plea

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner

must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney

> will turn out to be mistaken either as to the facts or as to what a
> court's judgment might be on given facts. That a guilty plea must
> be intelligently made is not a requirement that all advice offered
> by the defendant's lawyer withstand retrospective examination in
> a post-conviction hearing.

*McMann*, 397 U.S. at 769-70. Counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is

not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One         "The state court erred by denying Brend[e]l's claim that counsel Russell Ramey unreasonably failed to disclose or fully explain the potential, maximum penalties, consequences, and the content of the plea document associated with the charge and therefore the movant's plea was not knowingly [sic] or voluntary." (Doc. 1, p. 6).[3]

Petitioner challenges his plea to the lewd and lascivious molestation charge on the grounds that Attorney Ramey failed to advise him "of all pertinent matters" bearing on his decision whether to plead no contest. (Doc. 1, p. 6). Specifically, petitioner asserts that he entered the plea "without fully understanding the charge against him, the sexual offender designation associated with the charge and those statutory requirements, the maximum sentence associated with the charge, the potential for incarceration, the terms of the sentence he would be given such as the Jessica Lunsford Act electronic monitor requirement and sexual offender registration, and the additional consequences of accepting the plea such as the potential for future civil commitment." (Doc. 1, p. 6). Petitioner asserts that had Attorney Ramey properly advised him, he would not have pleaded no contest and would have

---

[3] Citations to page numbers of the petition are to those appearing at the top right corner of the page.

insisted on going to trial. (Doc. 1, p. 6). Respondent argues that petitioner has not met § 2254(d)'s stringent standard. (Doc. 19, pp. 16-21).

Petitioner presented this ineffective assistance claim to the state court as Ground One of his counseled Rule 3.850 motion. (Ex. A, pp. 11-14). The state circuit court identified the *Strickland* standard (as applied in *Hill*) as the controlling legal standard (Ex. B, p. 188-189), and denied relief as follows:

> In Ground One, the Defendant alleges that his plea was not knowing and voluntary because attorney Ramey did not disclose or fully explain the charge against him, the sexual offender designation associated with the charge and those statutory requirements, the maximum sentence associated with the charge, the potential for incarceration, the terms of the sentence he would be given such as the Jessica Lunsford Act electronic monitor requirement and sexual offender registration, and the additional consequences of accepting the plea such as the potential for future civil commitment. He alleges that attorney Ramey misinformed him of the charges or did not adequately explain them. He claims that he and his family understood that he had been charged with various felonies and misdemeanors, including battery, and that Ramey advised him that if he accepted the offer and pled to the charge of misdemeanor battery, all of the other charges would be dropped and he would receive probation. He alleges that he believed the only special condition of his probation would be to not engage in criminal activity. He further alleges that he and his family thought that if he rolled the dice and went to trial, he would be sentenced to at least 10-15 years in prison. The Defendant alleges that as a direct result of counsel's misrepresentation, he was unaware that he was pleading to a felony of lewd or lascivious molestation, which carried a maximum sentence of 15 years in prison and that he was agreeing to sexual offender probation. He alleges that attorney Ramey did not explain the plea and its consequences as required by Fla. R. Crim. P. 3.171, "did not

explain the statute or the plea agreement," and was aware that the Defendant only had a 3rd grade reading level and comprehension problems from his brain injury. He alleges that attorney Ramey did not explain the materials that he had the Defendant initial prior to the plea.

The Defendant's claim is without merit, as the record refutes these allegations. First, attorney Ramey announced the following at the plea hearing:

> Mr. Brendel will be entering a plea of no contest, changing his plea, instead of pleading not guilty, to the information as charged – lewd and lascivious molestation on a 15-year old with someone greater than 18 years of age, a second-degree felony. He'll be adjudicated guilty, will be sentenced to ten years of probation, which is a below the guideline agreement with the State of Florida based upon the victim's request. Early termination possible at 60 months. I've reviewed the statute for sexual offender registration, Section 943.0435, with my client. I've had both myself and Mr. Brendel initial the statutory requirements and dated it. We put the State versus Brendel caption on the top. I'd ask that the Court accept the copy of the statute along with the Plea, Waiver and Consent. I've also written it in as Paragraph 14 of the plea agreement. And Mr. Brendel will be requesting that his probation be transferred to the State of Maryland. Talked with the probation department, I understand it may take about a week for that transfer to go through with all the necessary steps he has to do before he can leave. My client is prepared to stay for that period of time to get that completed.

(*See* Transcript of Plea and Sentencing Hearing held January 29, 2008 at 3). Then the following exchange occurred:

MR. REGISTER [the prosecutor]: And I was just told that he qualifies for Jessica Lunsford, which is a leg monitor.

MR. RAMEY: I disagree that he qualifies for Jessica Lunsford, but I told him that if in the event someone finds that he qualifies for that, then he would be placed with an ankle monitor in Florida and perhaps in Maryland, as well, under the Florida statute.

*Id.* at 3-4. The Court asked the Defendant whether he was satisfied with his attorney's services, and he said "Oh, yes, sir." *Id.* at 5. The Court asked the Defendant whether he had heard what his attorney had said about his case and what was going to happen with it, and he said "Yes, sir." He agreed that he was choosing to accept the plea because it was in his best interest. The Court asked the Defendant whether he was under the influence of drugs or alcohol, and he said that he was not. He stated that he went over the plea agreement with his attorney and signed it. The Court informed the Defendant of his right to a trial, to present defenses, to make the State prove his guilt beyond a reasonable doubt, to confront the State's witnesses and call his own witnesses, and to appeal his guilt or innocence, and the Defendant said that he understood he was waiving those rights by agreeing to be sentenced according to the plea agreement. *Id.* at 6-7.

The following exchange also occurred at the hearing:

THE COURT: You've been explained what the Jessica Lunsford Act means, correct?

THE DEFENDANT: (No Audible Response).FN3

FN3 Although the transcript indicates "No Audible Response" after the Court asked the Defendant whether it had been explained to him what the Jessica Lunsford Act meant, (Tr. at 7-8), there

is nothing in the record that indicates that the Defendant made a statement to the court that he did not understand, or that the Court had to reiterate to the Defendant what the Jessica Lunsford Act meant. Regardless, counsel specifically stated that, although he disagreed that the Defendant qualified under the Jessica Lunsford Act, he told the Defendant that in the event that it was determined he qualified, the Defendant "would be placed with an ankle monitor in Florida and perhaps in Maryland, as well, under the Florida statute." (Tr. at 3-4.) The Defendant acknowledged that he heard the announcement of his attorney. (Tr. at 5.)

THE COURT: And you also understand the registration requirements for sexual offenders?

THE DEFENDNT: Yes, sir.

*Id.* at 8. Additionally, the Defendant signed a written plea agreement form which indicated that the [sic] he was pleading no contest to the charge of Lewd and Lascivious Molestation, and the plea agreement listed the statutory maximum of "15 yr/10K." The plea agreement specifically stated "Register as a sexual offender under 943.0435, F.S." Paragraph 13 of the plea agreement was circled, which said: "I understand that if I enter a plea to a sexual offense, I may be subject to civil commitment following the expiration of my sentence, pursuant to the terms of the Jimmy Ryce Act." Counsel had also handwritten an additional paragraph on the plea form: "14. Reviewed chapter 943.0435 sexual offender registration and terms and understand requirements." (*See* Plea, Waiver and Consent.) Counsel attached a copy of the statute to the plea form, which both counsel

and the Defendant initialed at the beginning, indicating "Reviewed," and again at the end. (*See* attached statute initialed by Defendant; *see also* Tr. at 3.) The Court specifically asked the Defendant whether he went over the plea form with his attorney and signed it, and the defendant said that he had. (Tr. at 6.)

The transcript of the plea and sentencing hearing and the written plea agreement form, which the Defendant acknowledged under oath that counsel went over with him, refute the Defendant's allegations that he did not understand what he was charged with, did not know the maximum sentence he faced or the potential for incarceration, did not know the terms of the sentence such as the Jessica Lunsford Act electronic monitor requirement and the sexual offender registration requirement, and the potential for future civil commitment. A defendant is bound by his sworn answers during a plea colloquy. *Thompson v. state*, 50 So.3d 1208 (Fla. 4th DCA 2010); *Iacono v. State*, 930 So.2d 829 (Fla 4th DCA 2006). The Defendant's allegation that he and his family believed that he was only entering a plea to a misdemeanor is refuted by the record, given the fact that it was stated by his attorney and on the plea form that the charge was a second degree felony. Further, electronic monitoring was discussed and acknowledged as a possible requirement by counsel, and the Defendant affirmed under oath that he heard the announcement of counsel and that he was agreeing to enter the plea in his best interest. (Tr. at 3-5.) The Defendant also knew he was to be designated a sexual offender and acknowledged that the reporting requirements were explained to him. His contention that counsel knew he had only a 3rd grade reading level due to a brain injury is contradicted by his indication on the plea form that he had completed 10th grade. Finally, although attorney Ramey did, in fact, inform the Defendant of the sexual offender registration requirement – as the Defendant acknowledged in open court, in the plea agreement, and by initialing the copy of the statute and indicating he had reviewed it – the sexual registration requirement is a collateral consequence of a plea, and failure to inform a defendant of the sexual offender registration requirement does not render a plea involuntary. *State v. Partlow*,

840 So.2d 1040 (Fla. 2003). The same is true for the terms of sex offender probation. *Boutwell v. State*, 776 So.2d 1014 (Fla. 5th DCA 2001). The Defendant's allegations in this claim are fully refuted by the record and are without merit. Accordingly, this claim is due to be denied.

(Ex. B, pp. 189-192). The First DCA summarily affirmed. (Ex. D).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny

relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

Under the *Richter* test, petitioner must establish there was no reasonable basis for the First DCA to affirm the denial of his ineffective assistance claim. In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The state circuit court's factual determinations are amply supported – in fact conclusively established – by the state court record. Petitioner's signed, written plea agreement and the transcript of the plea hearing establish that petitioner was fully informed of the charge against him, the offense to which

he was entering his plea, his sexual offender designation and requirements, the maximum sentence he faced, the potential for incarceration, the Jessica Lunsford Act electronic monitoring requirement, and the potential for future civil commitment. (Ex. B, pp. 206-12 (written plea agreement); Ex. B, pp. 289-98 (transcript of plea hearing)); *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). In light of these facts, the state circuit court reasonably concluded that petitioner's claim was conclusively refuted by the record, and that petitioner failed to establish deficient performance and prejudice under *Strickland*. The circuit court's decision provides at least one reasonable basis on which the First DCA could have denied relief. As petitioner has not satisfied § 2254(d), he is not entitled to federal habeas relief on Ground One.

Ground Two          "The state court erred by denying Brendel's claim that counsel Ramey unreasonably failed to identify scoresheet errors." (Doc. 1, p. 8).

Petitioner argues that Attorney Ramey was ineffective for failing to identify and object to the following scoresheet errors: (1) classification of his

lewd and lascivious molestation offense as a level 8 carrying 74 points, rather

than a level 7 carrying 56 points; (2) the inclusion in petitioner's prior criminal

history of 2 third degree felonies and 3 misdemeanors, when in fact petitioner

had no prior felonies and only 2 misdemeanors (traffic offenses). (Doc. 1, p.

8). Petitioner admits that the scoresheet errors were later caught and corrected

during his 2012 VOP proceeding, but argues that he was still prejudiced by

Attorney Ramey's failure to notice the errors prior to entry of his plea, because

his scoresheet and prior record were used by the defense and the State during

plea negotiations and played a role in Ramey's advice to accept the plea offer.

(Doc. 1, p. 8). Petitioner asserts that "[h]ad the Movant known about these

errors, there is a reasonable probability that he would not have accepted a deal

and would have insisted on going to trial." (Doc. 1, p. 8). Respondent argues

that this claim provides no basis for federal habeas relief, because petitioner

has not shown that the state postconviction court's rejection of the claim was

based on an unreasonable determination of the facts or involved an

unreasonable application of clearly established Supreme Court precedent.

(Doc. 19, pp. 21-26).

Petitioner presented this claim to the state court as Ground Two of his

Rule 3.850 motion. (Ex. A, pp. 14-15). The state circuit court identified the

*Strickland* standard as the controlling legal standard (Ex. B, p. 188-189), and

denied relief as follows:

In Ground Two, the defendant alleges that counsel was ineffective for failing to identify scoresheet errors. Specifically, the Defendant claims that the primary offense on the scoresheet was classified as a level eight offense, carrying 74 points, rather than a level seven, which carried only 56 points. Further, the scoresheet contained the incorrect background by listing two prior third degree felonies and three misdemeanors, which the Defendant alleges do not exist. The Defendant acknowledges that these errors were corrected at the VOP hearing prior to his sentencing, but the erroneous scoresheet was used by attorney Ramey during plea negotiations. The Defendant asserts that Ramey insisted that the Defendant accept the plea instead of going to trial and risk being put away for 15 years. The Defendant argues that the inclusion of these points affected his sentence, because he relied upon Ramey's advice that it would not be good to go to trial based on the current charges, his scoresheet and his record. Had the Defendant known about these errors, he alleges that he would not have accepted the deal and would have insisted on going to trial.

The Defendant's claim is without merit. The Defendant's original probationary sentence was a downward departure, as indicated on the plea agreement. Even if the errors about which the Defendant complains were corrected – and the Defendant concedes in his motion that they were before the VOP sentencing hearing – the Defendant still scored 55.8 months in prison. (*See* Corrected Scoresheet from 5/30/12.) If the Defendant's community sanction violation points are subtracted, as they are specific to the VOP, the original scoresheet with corrections would have shown a lowest permissible sentence of 51.3 months incarceration.

Even if the Defendant's attorney was ineffective for failing to correct those errors, the Defendant has not demonstrated

prejudice. The original scoresheet with errors contained a lowest permissible sentence of 67.9 months. (*See* original Scoresheet from 1/29/2008.) The scoresheet corrections do not invalidate attorney Ramey's alleged advice that the defendant should accept the plea and get probation as opposed to going to trial and risk a sentence of 15 years of imprisonment. The statutory maximum sentence for a second degree felony was 15 years, and attorney Ramey's advice that the Defendant could receive this sentence after a trial was correct even with an adjusted scoresheet. *See* § 775.082(3)(d), Fla. Stat. The Defendant's allegation that he would not have accepted the downward departure offer of a probationary, non-incarcerative sentence had he known that his scoresheet should have shown a minimum sentence of 51.3 months of imprisonment rather than 67.9 months of imprisonment, but when he was still facing the same maximum of 15 years of imprisonment, is not objectively reasonable. There is no lesser sentence that the Defendant could have received than a probationary sentence. Under *Capalbo, supra*, the Court finds that this allegations [sic] is objectively unreasonable. This claim is due to be denied.

As to the Defendant's VOP sentencing, the errors he complains of were corrected before he was sentenced, and a correct scoresheet was used in calculating his sentence exposure. He does not, and cannot, allege that attorney Ramey's failure to correct the initial scoresheet affected the incarcerative sentence ultimately imposed after he violated his probation. Accordingly, Ground Two is denied.

(Ex. B, pp. 192-193) (footnote omitted). The First DCA summarily affirmed.

(Ex. D).

The First DCA reasonably could have adopted the state circuit court's

factual findings, because the record amply supports them. (*See* Ex. B, pp. 299-

302 (corrected scoresheet dtd. 5/10/2012); pp. 303-05 (original scoresheet dtd.

01/08/2007)).  Based on these facts, the First DCA reasonably could have concluded that petitioner failed to establish prejudice under *Strickland*. Petitioner has not demonstrated that had the scoresheet errors been corrected during plea negotiations, there is a reasonable probability he either would have received a more favorable plea offer from the State; would have been advised differently by Attorney Ramey; or would have insisted on going to trial on the lewd and lascivious molestation charge.  Correction of the minor scoresheet errors would not have affected the State's plea offer or petitioner's decision to accept it.  *See Richter*, 562 U.S. at 112 (reiterating that under *Strickland's* prejudice prong, "[t]he likelihood of a different result must be substantial, not just conceivable.").  The First DCA's rejection of this claim was based on a reasonable determination of the facts and a reasonable application of the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three    "The state court erred by denying Brendel's claim that counsel Ramey unreasonably failed to investigate the facts surrounding the charge."  (Doc. 1, p. 9).

Petitioner claims Attorney Ramey was ineffective for failing to conduct pretrial depositions of B.P. (the victim), C.H. (the victim's friend referenced in the complaint affidavit), and Samuel Thomas (petitioner's roommate

referenced in the complaint affidavit). Petitioner asserts that he "professed his innocence to attorney Ramey repeatedly, and requested that he question the alleged victim and two witnesses under oath." (Doc. 1, p. 10). Petitioner alleges that Ramey was aware of the witnesses because the State identified them in discovery and because their full names were contained within the record. Petitioner alleges that he "pleaded with attorney Ramey to depose all three witnesses and investigate the facts of the case because they were not being truthful (evidenced by their conflicting statements to law enforcement)." (Doc. 1, p. 10). Petitioner argues that had Ramey deposed the three witnesses, "he would have found large holes and inadequacies within their collective statements." (Doc. 1, p. 10).

To support his claim, petitioner provides his version of each witness' proposed testimony, which he apparently gleaned from the complaint affidavit and from the witnesses' sworn statements to law enforcement which were later provided to the defense.[4] Petitioner asserts that "[h]ad Ramey obtained said

---

[4] Petitioner's description of B.P.'s proposed deposition testimony is taken from the statements attributed to her in the complaint affidavit. (Doc. 1, p. 10; *see also* Ex. B, p. 307). Petitioner's description of C.H.'s and Samuel Thomas' proposed deposition testimony appears to be taken from their sworn statements to law enforcement. (S*ee* Ex. B, p. 307 (complaint affidavit indicating that each witness gave a sworn statement to law enforcement); Doc. 1, p. 10 (petitioner's references to the witnesses' statements to law enforcement)). Petitioner has not attached the sworn statements to his petition (or Rule 3.850 motion). Nor did petitioner provide affidavits from the witnesses to confirm their

conflicting statements under oath, the Movant would have gone to trial."

Petitioner explains:

> It is submitted that said conflicting testimony would have cast doubt on the Movant's guilt and revealed the witnesses' motivation to lie. Specifically, that B.P. was not touched by the Movant. Rather, on the date of the alleged incident, the Movant returned home from work to find B.P., her friend C.H. and his roommate Samuel Thomas ingesting hard drugs, either cocaine or crystal methamphetamine. Angry, the Movant confronted everyone, and told B.P. that he was going to notify her mother about what she was doing. The Movant would have testified that B.P. fabricated a story to her mother (who later called law enforcement) about being inappropriately touched by the Movant in an attempt to divert the attention away from the hard drugs the Movant caught her ingesting.

(Doc. 1, p. 10). Respondent argues that this claim provides no basis for federal habeas relief, because petitioner not shown that the state postconviction court's rejection of the claim was based on an unreasonable determination of the facts or involved an unreasonable application of clearly established Supreme Court precedent. (Doc. 19, pp. 26-29).

Petitioner presented this claim to the state court as Ground Three of his Rule 3.850 motion. (Ex. A, pp. 15-18). The state circuit court identified the

---

proposed testimony, even though he had the assistance of counsel in his state postconviction proceeding.

*Strickland* standard as the controlling legal standard (Ex. B, p. 188-189), and

denied relief as follows:

> In Ground Three, the Defendant alleges that counsel was
> ineffective for failing to investigate the facts surrounding the case,
> thereby forcing the Defendant into feeling he had no other option
> but to enter the plea. The Defendant states that he professed his
> innocence to his attorney and requested that he question the
> alleged victim and the two witnesses under oath. The Defendant
> states that the victim, B.P., and the two witnesses, C.H. and
> Samuel Thomas, should have [been] deposed . . . because they
> were not being truthful as indicated by their conflicting statements
> to law enforcement. He also claims that he informed his attorney
> that he wanted to testify at trial. Had attorney Ramey obtained
> these conflicted [sic] witness statements under oath, the
> Defendant asserts that he would have gone to trial.

> The First DCA recently addressed a defendant's claim that
> his counsel was ineffective for failing to investigate, made after
> the defendant had entered into a negotiated plea. The DCA held
> that by entering the plea, the defendant waived the right to have
> counsel investigate or put forward a defense. The DCA stated:

>> By entering a plea to the charges, Appellant waived
>> his right to have counsel investigate or put forward a
>> defense, including filing motions to suppress. *Davis
>> v. state*, 938 So.2d 555, 557 (Fla. 1st DCA 2006)
>> ("An appellant is not entitled to go behind sworn
>> representations made to the court in a postconviction
>> proceeding."). Where a defendant enters a plea and
>> swears that he is satisfied with his counsel's advice,
>> he may not later attack counsel's effectiveness for
>> failure to investigate or defend the charge. As the
>> Florida Supreme Court stated more than two decades
>> ago, "claims regarding ineffectiveness of counsel's
>> assistance . . . are an attempt to go behind the plea. .
>> . . By insisting on pleading guilty . . . [appellant]

rendered any further investigation pointless." *Stano v. State*, 520 So.2d 278, 279-80 (Fla. 1988).

*Clift v. State*, 43 So.3d 778 (Fla. 1st DCA 2010); *see also Smith v. State*, 41 So.3d 1037, 1040 (Fla.1st DCA 2010). The Defendant's allegations in his sworn motion demonstrate that the Defendant knew at the time he entered the plea that counsel had not deposed these three witnesses, and he alleges that he begged counsel to do so, but felt he had no other option but to enter the plea agreement because counsel would not investigate. The Defendant's allegations demonstrate that he chose to enter the plea despite this knowledge. The Court advised the Defendant that as part of his right to a trial, he had a right to call his own witnesses, and the Defendant stated that he understood that he was waiving that right by entering the plea. (Transcript of Plea and Sentencing Hearing held January 29, 2008 at 6-7.) The Court asked the Defendant whether he was satisfied with his attorney's services, and he said, "Oh, yes, sir." *Id.* at 5. He cannot now complain that counsel should have conducted a more thorough pretrial investigation. This is similar to what occurred in *Davis v. State*, 938 So.2d 555 (Fla. 1st DCA 2006), where the Court found the following:

> [W]hile suggesting his counsel was ineffective for failing to adequately prepare and research exculpatory evidence available to him prior to trial, the appellant does not and cannot assert he was unaware of his trial counsel's alleged deficiency at the time he entered his plea. In fact, the appellant concedes that prior to the entry of his plea, while under the effects of his medication, he argued adamantly with his lawyer regarding his counsel's failure to properly prepare his case. The appellant specifically mentions suggesting to his counsel prior to the entry of his plea that (1) the bite marks be analyzed for a match to his teeth (to see if it matches his teeth); (2) his medications be analyzed for side effects; (3) his ability to engage in sexual intercourse

based on health concerns be investigated; (4) his counsel investigate the identity of a woman known as Lisa Davis; and (5) his counsel investigate the co-defense of voluntary intoxication. Thus, the appellant cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to the entry of his plea.

. . .

An appellant is not entitled to go behind sworn representations made to the court in a postconviction proceeding. *See Stano v. State*, 520 So.2d 278, 280 (Fla. 1988). In the instant case, the appellant clearly states on record that he was satisfied with his attorney's services. Thus, he cannot now assert that at the time of the plea's entry he had serious doubts about his attorney's effectiveness.

*Id*. at 556-557. Here, as in *Davis*, the Defendant knew of counsel's alleged deficiencies at the time of the plea but chose to enter the plea anyway, and represented to the Court that he was satisfied with attorney Ramey's services. He cannot now assert that, at the time of the plea, he was dissatisfied with attorney Ramey's services, wanted attorney Ramey to do more, and felt like he had to enter the plea because attorney Ramey would not investigate the case or depose witnesses. Accordingly, this claim is due to be denied.

(Ex. B, pp. 193-194). The First DCA summarily affirmed. (Ex. D).

The state circuit court reasonably determined that petitioner failed to establish prejudice under *Strickland*. The record establishes, and petitioner admits, that prior to entering his plea he knew the substance of the proposed

witnesses' testimony because it was set forth in their statements to law enforcement provided to the defense. (*See* Doc. 1, p. 10 (referencing the victims "conflicting statements to law enforcement"); Doc. 19, Ex. B, p. 307 (Complaint Affidavit stating that the victim, her friend, and petitioner's roommate provided sworn statements to law enforcement)). Petitioner entered his negotiated plea despite having the witnesses' sworn statements. Petitioner has not come forward with specific facts showing that had Attorney Ramey obtained a <u>second</u> set of sworn statements from the same witnesses via deposition, there is a substantial likelihood he [petitioner] would not have entered the negotiated plea and would have insisted on going to trial. Petitioner's conclusory assertion, unsupported by specific facts, does not establish a reasonable probability. The state circuit court's reasonable analysis provides at least one reasonable basis on which the First DCA could have rejected petitioner's claim. Petitioner is not entitled to federal habeas relief on Ground Three.

| | |
|---|---|
| <u>Ground Four</u> | <u>"The state court erred by denying Brendel's claim that counsel Ramey unreasonably failed to object to the inadequate plea colloquy and therefore the movant's plea was involuntary."</u>  (Doc. 1, p. 12). |

Petitioner claims Attorney Ramey performed deficiently at the plea hearing when Ramey failed to challenge the trial court's acceptance of

petitioner's plea without satisfying the colloquy requirements of Florida Rule of Criminal Procedure 3.172, and without ensuring there was a sufficient factual basis for the plea. (Doc. 1, p. 12). Respondent asserts that petitioner's ineffective assistance claim is procedurally defaulted because he failed to present it to the state courts. (Doc. 19, pp. 30-34). Respondent argues that notwithstanding petitioner's procedural default, his claim is without merit because the issue underlying petitioner's ineffective assistance claim (the adequacy of the plea colloquy under Fla. R. Crim. P. 3.170 and 3.172) is a state law issue; the state court found as a matter of state law that the colloquy satisfied Florida's state law requirements; and this court must defer to the state court's determination of state law. (Doc. 19, pp. 34-39).

Before addressing the parties' arguments, the undersigned should recognize that the claim petitioner presents in Ground Four is an ineffective assistance of trial counsel claim based on Attorney Ramey's failure to object to the trial court's plea colloquy. The nature of petitioner's claim is reflected in his labeling of it as an ineffective assistance claim (doc. 1, p. 12), and in petitioner's concluding paragraph of his supporting argument where he summarizes:

> As a result of the actions of Ramey, Brendel was denied his right to effective assistance of counsel in violation of the Sixth

and Fourteenth Amendments to the United States Constitution. The state postconviction court's ruling on this claim was contrary to and an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Moreover, the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the proceeding.

(Doc. 1, p. 13).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[5] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full

---

[5] Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

A federal habeas petitioner does not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support his claim, or by presenting a somewhat similar claim. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004). "The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'" *Id.* at 1344 (*quoting Picard*, 404 U.S. at 277).

A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental

miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

"For cause to exist, an external impediment, whether it be governmental

interference or the reasonable unavailability of the factual basis for the claim,

must have prevented petitioner from raising the claim." *McCleskey v. Zant*,

499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v.*

*Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The

miscarriage of justice exception requires the petitioner to show that "a

constitutional violation has probably resulted in the conviction of one who is

actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L.

Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must

show that it is more likely than not that no reasonable juror would have

convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the
> conviction of an innocent person is extremely rare. To be
> credible, such a claim requires [a] petitioner to support his
> allegations of constitutional error with new reliable evidence –
> whether it be exculpatory scientific evidence, trustworthy
> eyewitness accounts, or critical physical evidence – that was not
> presented at trial.

*Id*.

Petitioner asserts that he presented his ineffective assistance of counsel

claim (Ramey's failure to challenge the sufficiency of the court's plea

colloquy) in his direct appeal and in his Rule 3.850 proceeding. (Doc. 1, p.

14). Petitioner did not, however, raise his ineffective assistance claim in his

direct appeal. Petitioner's direct appeal raised two issues:

> ISSUE I: Whether the trial court erred by failing to grant the Appellant's Amended Motion to Withdraw his Plea of No Contest?

> ISSUE II: Whether the judgment and sentence for a violation of Appellant's probation rendered on May 30, 2012, should be set aside if the plea of no contest in the underlying plea was involuntary.

(Ex. F). Petitioner summarized the argument raised in Issue I as:

> Appellant intends (sic) that the court erred by failing to grant the amended motion to withdraw plea. The record establishes that Appellant did not understand the consequences of his plea. Appellant's trial counsel [Attorney Ramey] correctly noted that Appellant had no knowledge that he had any responsibilities other than not break the law again. The Court's non-thorough plea colloquy establishes this.

(Ex. F, p. 11).

Petitioner's substantive challenge to the trial court's plea colloquy is not

the same as a Sixth Amendment ineffective assistance of trial counsel claim,

even if the latter is based on counsel's failure to challenge the plea colloquy.

The two are separate and distinct for purposes of satisfying AEDPA's

exhaustion requirement. *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289

(11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial

bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement) (*citing Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n. 24 (11th Cir. 2005) (noting that substantive claim was "separate and distinct" from ineffective assistance claim based on substantive claim)); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (holding that ineffective assistance claim based on counsel's failure to object to jury instruction was not the same as substantive due process claim challenging the trial court's giving of that instruction); *see also, e.g., Humphrey v. Fla. Dep't of Corr.*, 450 F. App'x 877 (11th Cir. 2012) (holding that federal habeas petitioner claiming that his equal protection and due process rights were violated when his wife was compelled to testify against him at trial was procedurally defaulted, where petitioner did not raise the claims in state court but instead argued in his state postconviction proceeding that trial counsel was ineffective for failing to object to admission of wife's testimony).  Petitioner did not exhaust his ineffective assistance claim in his direct appeal.

Petitioner also did not raise his ineffective assistance claim in his Rule 3.850 proceeding.  In his counseled Rule 3.850 motion, petitioner presented as

Ground Four this issue: "The Movant's Plea Was Involuntary Because The Plea Colloquy Was Inadequate." (Ex. A, pp. 18-24). Petitioner went on to enumerate the instances where the trial court's plea colloquy failed to comply with Fla. R. Crim. P. 3.172. (*Id.*). In denying petitioner's motion, the Rule 3.850 court construed Ground Four as a substantive challenge to the plea colloquy, not as a challenge to Attorney Ramey's representation. (Ex. B, p. 195 ("In Ground Four, the Defendant alleges that his plea was involuntary because the plea colloquy was inadequate. . . .")). The state court resolved the claim on state law grounds, applying Fla. R. Crim. P. 3.172 and state decisional law. (Ex. B, pp. 195-197). Petitioner did not exhaust his present ineffective assistance claim in his counseled Rule 3.850 proceeding.

Any present attempt by petitioner to return to state court to exhaust his ineffective assistance claim would be procedurally barred under Florida state rules as untimely and successive. *See* Fla. R. Crim. P. 3.850(b), (h); *see also LeCroy*, 421 F.3d at 1260 n.25 (stating that the Eleventh Circuit has "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law." (*citing Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990))). Petitioner has

made none of the requisite showings to excuse his procedural default.

Petitioner's procedural default bars federal habeas review of Ground Four.

Ground Five      "The state court erred by denying Brendel's claim that counsel Ramey unreasonably failed to file and argue a sufficient motion to withdraw plea and amended motion to withdraw plea."  (Doc. 1, p. 15).

Petitioner claims Attorney Ramey rendered constitutionally ineffective assistance following entry of his plea, when Ramey filed an original and amended motion to withdraw plea asserting that petitioner was incapable of understanding the consequences of his plea and of complying with the terms of probation due to a neurological injury.  Petitioner alleges this was a frivolous basis to attack his plea, because he had earlier been found competent to proceed.  Petitioner asserts that Ramey should have attacked the plea "based on the fact that there was no factual basis for the primary offense to which the Movant entered his plea." (Doc. 1, p. 15).  Petitioner goes on to complain that, after the original motion to withdraw plea was denied, Ramey filed an even more deficient amended motion that asserted the same basis as the first, except with an additional allegation that the motion was supported by an attached letter from petitioner's physician, but with no such letter attached.  (Doc. 1, pp. 15-16).  Ramey then failed to follow up on the amended motion, which left the motion pending with no judicial action for over two years.

Petitioner asserts he has met *Strickland's* prejudice prong with regard to the original motion to withdraw plea, because he has provided a viable alternative basis Ramey should have pursued. Petitioner asserts he is not required to show prejudice with regard to the amended motion, because prejudice is presumed under *Cronic*. (Doc. 1, pp. 15-16). Respondent asserts that petitioner is not entitled to relief, because he cannot show that the state postconviction court's rejection of this claim was based on an unreasonable determination of the facts, or involved an unreasonable application of clearly established Supreme Court precedent. (Doc. 19, pp. 39-43).

Petitioner presented this claim to the state court as Ground Five of his Rule 3.850 motion. (Ex. A, pp. 24-29). The state circuit court identified the *Strickland* standard as the controlling legal standard (Ex. B, p. 188-89), and denied relief as follows:

> In Ground Five, the Defendant alleges that his attorney was ineffective for failing to file and argue a sufficient motion to withdraw plea and an amended motion to withdraw plea. The Defendant first complains of his attorney's failure to file a motion that attacked the factual basis of the charges rather than a motion alleging incompetency to enter the plea. Further, the Defendant complains that counsel again filed an insufficient amended motion without supporting documents and did not ever follow up with the Court on his motion. The Defendant claims that, had his attorney presented the letter from the defendant's physician to support the claims in the motion, the court likely would have found the motion "reputable enough" and allowed the Defendant

to withdraw his plea. Instead, the Defendant was not able to withdraw his plea and is currently in prison for a violation of probation.

The Defendant's subclaim A involves the original Motion to Withdraw Plea filed on January 31, 2008. The Defendant alleges that attorney Ramey should have filed a motion to withdraw the plea based on the fact that there was no factual basis to the primary offense to which he entered the plea. Based upon the Court's analysis in Ground Four above, this issue is without merit.

The Defendant next argues in subclaim A that attorney Ramey failed [sic] a motion to withdraw plea alleging that the plea had been involuntarily entered, but focused on the Defendant's competency, and did not have any evidence to support the allegations he had made in the motion. The Defendant claims that this was "an insufficient theory that had already been invalidated," and notes that when attorney Ramey provided the Court with the competency evaluation, the Court immediately denied the motion. The Defendant has not demonstrated any prejudice from these alleged actions. He faults the way attorney Ramey argued the motion, but does not allege any arguments that Ramey could or should have made that would have been successful. Instead, as noted above, he asserts that Ramey should have argued the motion on similarly unmeritorious grounds. Therefore, this subclaim is without merit.

Subclaim B involves the Amended Motion to Withdraw Plea. The Defendant alleges that, after filing a timely amended motion to withdraw plea, attorney Ramey left the motion unheard for two years, during which time it was alleged that the Defendant violated the terms of his probation, and the Defendant was never able to withdraw his plea. He claims that attorney Ramey did not subject the prosecution's case to meaningful adversarial testing, citing *United States v. Cronic*, 466 U.S. 648 (1984) for the proposition that when there has been a complete absence of adversarial testing, a Sixth Amendment violation is established

without the showing of prejudice required under the *Strickland* test. The Defendant alleges that the Court found during the hearing on the motion to withdraw plea that the Defendant was competent and entered into his plea knowingly and voluntary [sic] "because there was a lack of evidence to support a finding of incompetence." He alleges that attorney Ramey filed the amended motion, but did not attach the letter from the Defendant's physician, "even though it was apparent from his discussions with the Court that this was a relevant and necessary piece of information" if he wanted to withdraw his plea. The Defendant specifically alleges: "Had attorney Ramey presented the letter as an exhibit to his motion, the court would have had some form of evidence to solidify Attorney Ramey's assertions." He alleges that it is "likely" that the Court "would have found Attorney Ramey's Amended Motion to Withdraw the Movant's Plea reputable enough, with the letter attached, to withdraw Movant's plea as involuntary." (Def.'s Motion at p. 28). The Defendant further alleges that attorney Ramey failed to pursue the motion, and did not inquire about the result of the motion for almost two years and did not make contact with him. He alleges that, as a result of attorney Ramey's ineffectiveness, he was unable to withdraw his plea.

The record refutes the Defendant's allegations. Contrary to the Defendant's argument, the Court did not deny the Defendant's initial Motion to Withdraw Plea because there was a "lack of evidence to support a finding of incompetence." Rather, the transcript demonstrates that the Court denied the motion because the record affirmatively showed that the Defendant was competent. Attorney Ramey acknowledged on the record that the result of the competency examination previously ordered by the Court was that the Defendant was competent to proceed. The Court reviewed the competency evaluation report, and then denied the Defendant's motion. (*See* Transcript of Motion Hearing held January 31, 2008 at 3, 7-8.) The Defendant's allegations that the physician's letter would have supported the allegations in the Amended Motion to Withdraw Plea and would have resulted in the Court permitting the Defendant to withdraw

his plea had attorney Ramey simply attached the letter are also without merit. As outlined in the procedural history above, the transcript of the January 27, 2012 hearing reflects that subsequent attorney Trucks investigated and found the letter, and conceded [at] this hearing that the letter that attorney Ramey had inadvertently failed to attach to the Amended Motion did not support the claim made in paragraph 9 of the Amended Motion. (*See* discussion in footnote 2, *supra*; *see also* Court's order denying the amended motion). The Defendant was not prejudiced by attorney Ramey's failure to attach the letter, because attorney Trucks found the letter and determined that it did not support the claim. Had attorney Ramey attached the letter, the record demonstrates that the Court would still have denied the Amended Motion to Withdraw Plea.

With regard to the length of time that the Amended Motion to Withdraw Plea remained pending, it is true that the record does not provide an explanation for attorney Ramey's failure to pursue the motion. However, even if this constituted deficient performance, the Defendant cannot demonstrate prejudice. When attorney Trucks realized that the motion had not been disposed of, he set the motion for a hearing and litigated it. The State has conceded that attorney Ramey's Amended Motion was timely filed and that this Court had jurisdiction to entertain it. Attorney Trucks located the exhibit that was supposed to have been attached to the motion. Thus, regardless of attorney Ramey's failure to pursue the [A]mended [M]otion, the motion was fully litigated by attorney Trucks. The Defendant's claim that he does not have to demonstrate prejudice because attorney Ramey failed to submit the State's case to adversarial testing under *Cronic* is without merit. The Defendant chose to enter a plea of no contest to the offense. *U.S. v. Collins*, 430 F.3d 1260 (10th Cir. 2005), does not support the Defendant's allegation as he claims. There, the issue was "whether the government's case for competency was subject to meaningful adversarial testing." *Id*. at 1265. The Tenth Circuit noted that the defendant's attorney "abstained from providing the court with information relevant to the issue of competency" and repeatedly declared that he would "not

comment" on his client's competency due to his pending motion to withdraw as counsel. On the contrary, attorney Ramey moved for a competency evaluation, which was performed and which demonstrated that the Defendant was competent. Attorney Ramey's motion to withdraw as counsel of record, filed July 16, 2007, was resolved on July 24, 2007, long before the Defendant entered the plea in this case and long before the motion and amended motion to withdraw plea were filed. (*See* Motion to Withdraw as Counsel of Record; minute sheet of July 24, 2007 pretrial hearing). There was no pending motion to withdraw, either at the time of the Defendant's plea or his motions to withdraw plea, which would have tied attorney Ramey's hands. Additionally, attorney Ramey argued vigorously at the January 31, 2008 hearing that the Defendant had not understood the plea, and submitted the competency evaluation for the Court to review. (*See* Transcript of Motion Hearing held January 31, 2008.) *Collins* does not control the outcome of this case. The Defendant must demonstrate prejudice under the *Strickland* standard and, for the reasons outlined above, has failed to do so. Accordingly, Ground Five is also due to be denied.

(Ex. B, pp. 197-199). The First DCA summarily affirmed. (Ex. D).

Petitioner must establish there was no reasonable basis for the First DCA to reject his claim. As to petitioner's complaint about Attorney Ramey's original motion to withdraw plea – that Ramey based the motion on the wrong grounds – the First DCA reasonably could have concluded petitioner failed to establish prejudice under *Strickland*. Petitioner must show that but for Ramey's focus on petitioner's competency, there is a reasonable probability a motion to withdraw plea would have been granted. Petitioner's proposed alternative basis for the motion, however, had no reasonable probability of

success.  As the state circuit court explained in denying relief on a different

claim that attacked the factual basis for petitioner's plea:

> First, the record reflects that attorney Ramey stated that the
> Defendant was entering a plea to "lewd and lascivious
> molestation on a 15-year old with someone greater than 18 years
> of age."  (*See* Transcript of Plea and Sentencing Hearing held
> January 29, 2008 at 8).  Counsel also stated, "And as far as the
> findings of fact required by the statute, the alleged victim in this
> case was 15 years of age.  I think the State and defense can agree
> there was no force used and the genitals were clothed during the
> term of the alleged event, which I think the statute requires you
> to make a finding of fact."  (Tr. at 4.)  After the prosecutor
> agreed, the Court said, "The complaint affidavit might be a little
> bit obscure on that point, so we'll take . . . accept your
> representations.  Those findings are in the record."  *Id.*  The Court
> stated that it had reviewed the complaint affidavit, and that there
> was a factual basis for the plea, as stipulated by counsel, and the
> facts were noted in the record.  *Id.*  The complaint affidavit
> alleges the defendant's and the victim's ages and describes the
> allegations made against him by the victim and her friend.  (*See*
> Affidavit/Complaint.)  The Defendant's claim that the trial court
> did not determine whether there was a factual basis for the plea
> is without merit and refuted by the record. . . . Although the
> Defendant now wants to contest the charges, he was well aware
> at the time of the plea of the nature of the allegations against him
> and the factual basis for the offense, based upon counsel's
> representations to the court and the Defendant's
> acknowledgement that he heard counsel's announcement. . . .

(Ex. B, pp. 196-197).  The circuit court's findings are established by the record,

and the First DCA reasonably could have adopted them.  Based on these

findings, the First DCA reasonably could have concluded, as the state circuit

court did, that petitioner failed to establish he was prejudiced by Ramey's choice of grounds on which to base his motion to withdraw plea.

As to petitioner's complaint about Ramey's performance on the amended motion to withdraw plea, there is no merit to petitioner's argument that the state court improperly utilized the *Strickland* standard instead of *Cronic*. Petitioner argues that *Cronic* applies, because Ramey's failure to follow up on the amended motion and his lack of contact with petitioner for two years effectively denied petitioner counsel at a critical stage of his case.

The Supreme Court in *Cronic* theorized that a presumption of prejudice is warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The Court explained in a subsequent case, however:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic, supra*, at 659, 104 S. Ct. 2039 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.

*Bell v. Cone*, 535 U.S. 685, 696-697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).

The aspect of Ramey's performance petitioner challenges – the failure to follow up on the status of the amended motion to withdraw plea – is a specific attorney error that is subject to *Strickland*'s performance and prejudice components. *Cf. Cone* at 695-698 (holding that the failure of an attorney to perform specific tasks was insufficient for the second *Cronic* exception and should be judged under the *Strickland* standard). Thus, the state court correctly identified the principles announced in *Strickland* as governing the analysis of petitioner's claim. The First DCA's rejection of petitioner's claim is not contrary to clearly established federal law.

With regard to the "unreasonable application" element of § 2254(d)(1), the First DCA reasonably could have concluded that petitioner failed to establish prejudice with regard to Ramey's failure to attach the physician's letter and failure to request judicial action on the amended motion. As the state circuit court reasonably determined (and as the First DCA reasonably could have found), the record establishes that petitioner's subsequent attorney Karl Trucks admitted that the physician's letter did not support a finding that petitioner was incompetent when he entered his plea. As to the failure to ensure prompt judicial action on the amended motion, petitioner failed to establish he was prejudiced by the delay, because the state court ruled on the

merits of the motion despite its lengthy pendency. Because the state circuit court's evaluation of petitioner's claim provides at least one reasonable basis on which the First DCA could have denied relief, petitioner has not satisfied his burden under § 2254(d)(1).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six        "The Movant's admission to violating his probation was involuntary." (Doc. 1, p. 18).

Petitioner's final claim asserts that his pleas to both the underlying offense and the violation of probation were involuntary. Petitioner explains:

> It is submitted that as a result of the above, as well as all arguments contained herein, the Movant's admission to violating the terms and conditions of his probation on April 25, 2012 was not knowingly [sic] and voluntary. The underlying sentence of probation was predicated on an involuntary plea of no content. Further, the subsequent violation of probation admission was also involuntary because just as before, the Movant did not understand what he was admitting to and the consequences of said admission.
>
> Therefore there is a reasonable probability that had counsel Ramey not failed to file and argue a sufficient motion to withdraw plea that the Movant would have been able to proceed to trial and therefore would not have been subjected to a probationary violation.

(Doc. 1, p. 18). Petitioner asserts that he presented this claim to the state courts in both his direct appeal and in his Rule 3.850 proceeding. (Doc. 1, p. 18).

Respondent argues that to the extent a federal claim can be construed from petitioner's allegations, he failed to exhaust it because he failed to argue a federal claim in state court, and failed to articulate a facially sufficient claim that his admission to the probation violation was involuntary. (Doc. 19, pp. 43-44). Respondent argues that petitioner's claim appears to be, at best, nothing more than a general repetition of his previous claims, and that the state postconviction court's rejection of the claim was consistent with clearly established federal law. (Doc. 19, pp. 45-46).

Any federal claim arising from petitioner's allegations is procedurally barred because petitioner did not fairly present a federal constitutional question to the state courts. As the Eleventh Circuit explained in *French v. Warden, Wilcox State Prison*, 790 F.3d 1259 (11th Cir. 2015):

> The "fair presentation" requirement is designed to ensure that state courts have the opportunity to hear all claims. *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971). Accordingly, federal courts require a petitioner to present his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley v. Sec'y Dept. of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004). . . . The ground relied upon must be presented face-up and squarely; the federal question must be plainly

> defined.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."  *Id.* at 1345 (internal quotation omitted).

*Id.* at 1270-71.  Although it is difficult to "pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies," it is clear that neither petitioner's counseled direct appeal brief, nor his counseled Rule 3.850 motion, met that threshold.  *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

Petitioner's counseled direct appeal brief cited exclusively to state cases and state rules of procedure, and all of his substantive arguments addressed Florida law.  (Ex. F, pp. 16-17).  Petitioner made no mention of the United States Constitution, a right protected by the Constitution or federal law, any federal standard, or any federal case law.

Petitioner's counseled Rule 3.850 motion stated, in total:

> It is submitted that as a result of the above, as well as all arguments contained herein, the Movant's admission to violating the terms and conditions of his probation on April 25, 2012 was not knowingly [sic] and voluntary.  The underlying sentence of probation was predicated on an involuntary plea of no content. Further, the subsequent violation of probation admission was also involuntary because just as before, the Movant did not understand what he was admitting to and the consequences of said admission.

(Ex. A, p. 29). Again, petitioner made no mention of the United States Constitution, a right protected by the Constitution or federal law, any federal standard, or any federal case law. As any present attempt by petitioner to return to state court to exhaust a federal claim would be procedurally barred under Florida state rules, Ground Six is considered procedurally defaulted. Petitioner has made none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars federal habeas review of Ground Six.

Even if this court found petitioner had satisfied the exhaustion requirement, he would not be entitled to relief. The state circuit court in petitioner's Rule 3.850 proceeding rejected the claim on the grounds that (1) none of petitioner's previous grounds for relief showed that his plea to the lewd and lascivious molestation charge was involuntary; (2) petitioner's challenge to the voluntariness of his VOP admission was "vague and conclusory" in that petitioner "d[id] not specify what aspect of the VOP plea and sentence he did allegedly not understand"; and (3) the transcripts of the VOP plea and sentencing hearings reflected that petitioner's admission to violating his probation (by absconding) was freely and voluntarily made. (Ex. B, pp. 199-200). The First DCA summarily affirmed. (Ex. D).

Because there is no merit to any of petitioner's Grounds One through Five, and because petitioner's assertion that he did not understand the nature of his VOP admission or its consequences is wholly vague and conclusory, the First DCA's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to federal habeas relief on Ground Six.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, — L. Ed. 2d — (Feb. 22, 2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgments and sentences in *State of Florida v. Charles Greg Brendel*, Bay County Circuit Court Case No. 06-CF-4244, be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 10th day of May, 2017.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.